AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>John Vincent Smith, et al.,<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 17 – 6297 – SNOW

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 28, 2017 _____ in the county of _____ Broward _____ in the
___ Southern ___ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 United States Code Section 846 | conspiracy to possess with intent to distribute cocaine |
| 21 United States Code Section 963 | conspiracy to import cocaine into the United States |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Joshua B. Evans, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 07/29/2017 _____

_____
*Judge's signature*

City and state: _____ Ft. Lauderdale, Florida _____

Hon. Lurana S. Snow, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Joshua B. Evans, Special Agent (SA) with the Drug Enforcement Administration, (DEA), Miami, Miami-Dade County, Florida, being first duly sworn, state the following:

1. I am currently employed as a Special Agent (hereafter SA) of the United States Department of Justice, Drug Enforcement Administration (hereafter DEA), Homestead Resident Office (hereafter HRO) and have been so employed since May of 2012. I have received numerous hours of formal classroom training in the investigation of narcotics and dangerous drugs from the Drug Enforcement Administration Academy in Quantico, Virginia and in other specialized training courses. As a result, I am trained in the means and methods used by persons and drug trafficking organizations to communicate, purchase, transport, store, and distribute drugs, as well as the means and methods used to hide profits generated from those transactions.

2. This affidavit is written in support of a complaint based upon information personally known to me and information which has been supplied by other law enforcement officers and civilian witnesses. The affidavit is being submitted for the limited purpose of establishing probable cause to arrest John Vincent SMITH, Javonno PINDER and Aaron Roman BUTLER for conspiracy to possess with intent to distribute cocaine, in violation of Title 21, United States Code, Section 846 and conspiracy to import cocaine, in violation of Title 21, United States Code, Section 963. As such, it does not include all the facts I have learned during the course of the investigation. All of the events described in this affidavit were witnessed by myself or other individuals involved in the investigation.

1

3. On March 10, 2017, I received information from a Confidential Source (CS) advising that an individual, later identified by law enforcement as John Vincent SMITH, had asked the CS if the CS could transport drugs from Freeport, Bahamas, to south Florida.

4. Between March 2017 and July 2017, the CS, an individual later identified as Aaron Roman BUTLER, and others met with the CS on 4 to 5 occasions to discuss the details of the load of drugs to be transported.   Both SMITH and BUTLER engaged in the discussions regarding the payment and details of the transportation.   On at least one occasion, BUTLER drove SMITH to the meeting driving a dark gray Altima.

5. On July 21, 2017, SMITH and an individual later identified as Javonno PINDER, met with the CS and provided the CS with $3,900 in United States currency as an initial payment for the CS to travel to Freeport, Bahamas, on the CS's vessel, and pick up multiple kilograms of cocaine from a source. SMITH and PINDER told the CS varying amounts of kilograms that the CS would be picking up because they were not sure exactly how many it would be. They also advised that PINDER would travel on the vessel with the CS from Ft. Lauderdale, Florida, to Freeport, Bahamas, to pick up the kilograms and return to Ft. Lauderdale on the vessel with the CS.   The agreement between the parties was that the CS would maintain possession of the cocaine until his fee was paid.

6. On July 28, 2017, The CS, PINDER, and another individual traveling with the CS, departed on the CS's boat from Ft. Lauderdale, Florida, destined for Freeport, Bamahas. When they arrived in the water near Freeport, they were met by another vessel whose occupants transferred 15 kilograms of cocaine onto the CS's vessel. The CS, PINDER and the third individual then returned to Ft. Lauderdale.

2

7.  During the return trip, PINDER and the CS had several conversations regarding what would happen with the cocaine once they arrived in Ft. Lauderdale. PINDER told the CS that PINDER would have to stay with the cocaine and at one point, PINDER began moving a large cooler that the CS believed PINDER was going to try and use to take the cocaine off the vessel. PINDER also informed the CS that BUTLER was actually the one who provided the money to SMITH who in turn provided it to the CS.

8.  Prior to the vessel's arrival in Fort Lauderdale, law enforcement established surveillance in the area of Isle of Venice Drive, the location where the vessel was expected to dock. Soon, surveillance observed a dark gray Nissan Altima drive up and down the street in the area several times. This dark gray Altima matched the description given by the CS as the vehicle driven by BUTLER when the CS, SMITH and BUTLER met earlier.

9.  After the CS's vessel arrived, law enforcement observed two black males exit the dark gray Altima and walk toward the dock where the vessel was located. At that time, SMITH and BUTLER appeared at the dock where the boat was located. SMITH told the CS that (contrary to their prior agreement) he was taking the cocaine off the boat and that he would leave only one kilogram of cocaine for the CS.

10.  SMITH then boarded the boat in order to remove the cocaine.  When the CS tried to stop him, SMITH grabbed the CS by the neck and pushed the CS to the floor of the vessel. SMITH pointed at BUTLER and in BUTLER's presence, SMITH told the CS that BUTLER would shoot the CS if the CS tried to stop him from removing the cocaine.

11.  Law Enforcement then initiated a takedown at which point BUTLER attempted to flee by running from the scene.  Law enforcement was able to apprehend him near the Altima. During the takedown, an agent observed SMITH throw his phone into the water.

12. Despite clearly being seen outside of the Altima and on the dock near the CS's vessel, during a post Miranda interview BUTLER told agents that he never exited the Nissan Altima or went near the CS's vessel.

13. A subsequent search of the vessel revealed 15 kilograms of cocaine inside of a black plastic trash bag in a cabinet inside the smaller, middle bedroom of the CS's vessel.

14.  Based on the foregoing facts, your affiant submits that probable cause exists to believe that John Vincent SMITH, Javonno PINDER and Aaron Roman BUTLER did knowingly conspire to possess with intent to distribute cocaine, in violation of Title 21, United States Code, Section 846 and conspire to import cocaine into the United States, in violation of Title 21, United States Code, Section 963.

**FURTHER YOUR AFFIANT SAYETH NOT**

Joshua B. Evans, Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to
Before me this 29th day of July, 2017

HONORABLE LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 17-6297-Smow

UNITED STATES OF AMERICA

vs.

JOHN VINCENT SMITH, et al.,

Defendants.

_____/

## CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Northern Region of the United States
    Attorney's Office prior to October 14, 2003?  _____ Yes  ___X___ No


Respectfully submitted,

Benjamin G. Greenberg
ACTING UNITED STATES ATTORNEY


BY:  _____
     LYNN M. KIRKPATRICK
     ASSISTANT UNITED STATES ATTORNEY
     Court No. A5500737
     99 N. E. 4th Street
     Miami, Florida   33132-2111
     TEL (305) 961-9239
     FAX (305) 536-7213